IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| v. | § | No. 16 CR 290 MV |
| FAWN VIGIL, | § | |
| Defendant. | § | |

## FAWN VIGIL'S BRIEF IN SUPPORT
## OF RELEASE PENDING SENTENCING
**(For Decision by Magistrate Judge Lynch)**

For almost four years[1] the government was content to allow Fawn Vigil to care for her children, nurse her injured daughter back to health, live at home, care for her family, and to continue to drive, including thirteen trips from Dulce to Carrie Tingley Hospital for her daughter's treatment and rehabilitation (171 miles each way). Now, it suddenly contends she is a danger to the community and should be detained.

The only possible way a highway accident could qualify as a crime of violence is if under the residual clause of 18 U.S.C. § 3156(a)(4), this Court finds that there was a substantial risk that "force would be *used*" against another. But in *Johnson v. United States*, 135 S.Ct. 2551 (2015) the Supreme Court found the residual clause of a similar statute

---

[1] The accident which led to these charges occurred three years, eleven months, and thirteen days before today, and 3 years, 9 months, 15 days before the indictment.

unconstitutionally vague. Since the *Johnson* decision, numerous other residual clauses, including the one at issue here, have been found to also suffer from the same defect.

## Applicable Statute and Standard

The parties agree that 18 U.S.C. § 3143 governs release pending sentencing, and that the relevant definition of "crime of violence" is found at 18 U.S.C. § 3156(a)(4). Probation has recommended that Ms. Vigil be allowed to return home with her family in the event this Court finds that § 3143(a)(1) (governing cases *not* involving crimes of violence or drug trafficking) applies.

Pursuant to 18 U.S.C. § 3143(a)(1), Ms. Vigil must demonstrate "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)."[2]

## Negligent (Reckless) Child Abuse is Not a Crime of Violence

Only if this Court finds child abuse to be an intentional crime of violence would the mandatory detention provisions of § 3143(a)(2) apply.

There are many statutes in the federal system defining "crime of violence." The applicable statute to this context is virtually undistinguishable from many of the others. Like many of the others, there are three portions to 18 U.S.C. § 3156(a)(4):

---

[2] § 3142(b) provides for release on personal recognizance; (c) is the parsimony clause requiring the court to impose the least restrictive additional conditions that the court finds is necessary to reasonably assure the person's appearance and the community's safety.

> (4) the term "crime of violence" means—
>
> (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; *(clauses such as this are typically referred to as "force" or "elements" clauses)*
>
> (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense *(clauses such as this are typically referred to as "residual" clauses)*; or
>
> (C) any felony under Chapter 77 [human trafficking], 109A [sex offenses], Chapter 110 [sexual exploitation] and Chapter 117 [transportation for illegal sexual activity] *(clauses such as this are typically referred to as "enumerated" clauses)*

Subsection (C) clearly does not apply. Nor does Subsection A. Included as Endnotes are the statute[1] (in relevant part) and the uniform jury instruction.[2] There is no element of force, or of attempted or threatened use of force. The issue before this Court is whether child abuse under New Mexico law is an "offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," making it a crime of violence under subsection (B). It is therefore instructive to look at similar statutes and court interpretations of them.

# Crimes of Violence Under Federal Law

Many different federal statutes and guidelines define "crime of violence." Here are some pertinent examples:

| 18 U.S.C. § 3156(a)(4)[3] Bail Reform Act | 18 U.S.C. § 16 General COV[4] def. | 18 U.S.C. § 924(c) Use of gun in conn. w/ COV or drugs | 18 U.S.C. § 924(e) Armed Career Criminal Act |
|---|---|---|---|
| (4) the term "crime of violence" means— . . . (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense | The term "crime of violence" means— . . .(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. | (3) [] the term "crime of violence" means an offense that is a felony and—(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. | (B) the term "violent felony" means . . .(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. |

---

[3] Only the relevant subsections, the "residual clauses," are reproduced here.

[4] Crime of Violence will be abbreviated in places in this brief as "COV."

In the guidelines, additional definitions are found:

| USSG § 2L1.2 (illegal reentry) | USSG § 4B1.2 (Career Offender) |
|---|---|
| "Crime of violence" means [twelve listed offenses], or any other offense [] that has as an element the use, attempted use, or threatened use of physical force against the person of another. | The term "crime of violence" . . . is [the four listed ACCA offenses], or otherwise involves conduct that presents a serious potential risk of physical injury to another. |

These definitions fall into three categories:

1. Those that require that there be a substantial risk that physical *force may be used*. Statutes in this category include 18 U.S.C. § 3156(a)(4) (Bail Reform Act), 18 U.S.C. § 16 (general crime of violence), and 18 U.S.C. § 924(c) (use of a gun in connection with a COV or drug offense.)

2. Those that involve conduct that presents a *risk of physical injury*. Falling into this category are 18 U.S.C. § 924(e) (Armed Career Criminal Act) and USSG § 4B1.2 (Career Offender).

3. The illegal reentry guideline, USSG § 2L.2, does not contain a residual clause; only enumerated offenses and element clauses.

**Supreme Court Interpretations of COV Statutes**

*Leocal v. Ashcroft,* 543 U.S. 1 (2004), determined that DWI causing serious bodily harm was not a "crime of violence" under 18 U.S.C. § 16, whose language in relevant part is identical to that of § 3156. Leocal was alleged by the then-INS to have been convicted

of a crime of violence and thus subject to deportation. The United States Supreme Court found that the fact that harm or injury might occur was not the same as § 16's requirement that there be a substantial risk that force *may be used* against a person or property. "The critical aspect of § 16(a) is that a crime of violence is one involving the 'use . . . of physical force *against the person or property of another.*' (Emphasis added.) As we said in a similar context in *Bailey*, 'use' requires active employment. *516 U.S., at 145, 133 L. Ed. 2d 138, 113 S. Ct. 501*." 543 U.S. at 8. "In no 'ordinary or natural' sense can it be said that a person risks having to 'use' physical force against another person in the course of operating a vehicle while intoxicated and causing injury." *Id.* at 11. Finally, the Court made clear in footnote 7 that "§16(b) plainly does not encompass all offenses which create a 'substantial risk' that injury will result from a person's conduct. The 'substantial risk' in § 16(b) relates to the use of force, not to the possible effect of a person's conduct," *citing United States v. Lucio–Lucio,* 347 F.3d 1202, 1205–1207 (10th Cir. 2003).

To be sure, the *mens rea* involved in that case was negligence rather than recklessness, but subsequent caselaw has made it clear that reckless conduct cannot qualify as a crime of violence. *See, infra,* at 11.

In *Begay v. United States,* 553 U.S. 137 (2008), the Supreme Court next considered whether DWI qualified as a crime of violence under the ACCA, 18 U.S.C. § 924(e). Finding that DWI did not present the same purposeful, violent, and aggressive conduct that the enumerated offenses did, the Court reversed Judge Johnson's finding that

a DWI could serve as a predicate offense for ACCA. "[The enumerated crimes'] presence indicates that the statute covers only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.'" 553 U.S. at 142. The Court contrasted the "purposeful, violent, and aggressive conduct" of the enumerated offenses with the virtual strict liability mens rea of DWI. Although *Begay* noted this low *mens rea*, the government argued successfully in *United States v. Zunie,* 444 F.3d 1230 (10th Cir. 2003) that driving while extremely intoxicated[5] constituted reckless conduct, meeting the elements of assault under 18 U.S.C. § 113. In *Begay*, the Supreme Court cited the Tenth Circuit decision in *Begay*, where Judge McConnell, dissenting in part, wrote, "[D]runk driving is a crime of negligence or recklessness, rather than violence or aggression." 470 F.3d 964, 980 (10th Cir. 2006). So the difference between simple negligence and recklessness was not key to the *Leocal* decision, but rather, the fact that DWI is not purposeful, violent, and aggressive conduct so as to constitute a crime of violence under the ACCA.

## Johnson holds Residual Clauses Unconstitutionally Vague

Next, in *Johnson v. United States,* 135 S.Ct. 2551 (2015) the Supreme Court held that the ACCA residual clause is unconstitutionally vague because "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to

---

[5] In contrast to Zunie, Ms. Vigil was not intoxicated at the time of the accident.

defendants and invites arbitrary enforcement by judges. Increasing a defendant's sentence under the clause denies due process of law." 135 S.Ct. at 2557. Johnson was charged under Minnesota law with possession of a short barreled shotgun. The Court discussed its series of cases attempting to create a meaningful test to determine whether an offense constituted a crime of violence[6] and concluded,

> It has been said that the life of the law is experience. Nine years' experience trying to derive meaning from the residual clause convinces us that we have embarked upon a failed enterprise. Each of the uncertainties in the residual clause may be tolerable in isolation, but "their sum makes a task for us which at best could be only guesswork." *United States v. Evans,* 333 U.S. 483, 495, 68 S.Ct. 634, 92 L.Ed. 823 (1948). Invoking so shapeless a provision to condemn someone to prison for 15 years to life does not comport with the Constitution's guarantee of due process.

*Id.* at 2560. Both of the features outlined in *Johnson* that make the residual clause void for vagueness are present in 18 U.S.C. § 3156(a)(4)(B).

While the risk assessed in § 3156(a)(4)(B) concerns the use of physical force and not physical injury, the same uncertainty and lack of guidance accompany the inquiry. Indeed, in the course of litigating *Johnson*, the Solicitor General agreed that 18 U.S.C. § 16(b) (a provision worded exactly the same as § 3156(a)(4)(B)) proves equally

---

[6] "We have held that the residual clause (1) covers Florida's offense of attempted burglary *James v. United States,* 550 U.S. 192, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007); (2) does *not* cover New Mexico's offense of driving under the influence, *Begay v. United States,* 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008); (3) does *not* cover Illinois' offense of failure to report to a penal institution, *Chambers v. United States,* 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009); and (4) does cover Indiana's offense of vehicular flight from a law-enforcement officer, *Sykes v. United States,* 564 U.S. 1, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011)." *Id.* at 2556.

problematic. The language at issue here "is equally susceptible to petitioner's central objection to the residual clause." That's because "[l]ike the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense and to make a commonsense judgment about the risk of confrontations and other violent encounters." *Johnson v. United States*, S. Ct. No. 13-7120, Supplemental Brief of Respondent United States at 22-23 (available at 2015 WL 1284964). The government should be held to its concession.

Indeed, the applicability of *Johnson* to the residual clause of § 3156 is made clear by the fact that courts have routinely compared the similarities between the ACCA residual clause and the residual clauses of 18 U.S.C. § 16(b) and 18 U.S.C. § 924(c) – which *are* identical to the Bail Reform Act's definition, both before and after *Johnson*. *See, e.g., Johnson*, 135 S. Ct. at 2558) ("Section 16(b) gives judges no more guidance than does the ACCA provision as to what constitutes a substantial enough risk of force to satisfy the statute"); *Chambers*, 555 U.S. at 133 n.2 (2009) (citing circuit splits on § 16(b) in the context of a residual clause case because § 16(b) "closely resembles ACCA's residual clause") (Alito, J., concurring); *United States v. Madrid,* 805 F.3d 1204, 1211 (10th Cir. 2015) (finding the career offender (§ 4B1.2) residual clause void after *Johnson* and that the imposition of a career offender sentence constituted plain error); *United States v. Sanchez-Espinal*, 762 F.3d 425, 432 (5th Cir. 2014) (despite the fact that the

ACCA talks of risk of injury and § 16(b) talks of risk of force, "we have previously looked to the ACCA in deciding whether offenses are crimes of violence under § 16(b)").

In *United States v. Edmundson*, 2015 WL 9311983 (D. Md. Dec. 30, 2015) the court ruled that conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), does not qualify as a crime of violence under 18 U.S.C. § 924(c) in light of *Johnson* and concluded that the residual clause contained in 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague.

In *United States v. Elliott*, 1:15-cr-00050-MOC-DLH Doc. 32 (W.D.N.C. 09/30/15) the district court reversed a magistrate judge's order finding that 18 U.S.C. § 922(g) was a crime of violence subjecting the defendant to mandatory detention under 18 U.S.C. § 3156.

> As that language is substantially identical to the language used by Congress in defining "violent crime" under the ACCA, it is now readily apparent to this court that § 3156(a)(4)(B) suffers from the same infirmity that has impaired the residual clause of § 924(e)(2)(B)(ii) as found in *Johnson*. . . .
>
> Thus, in light of the Supreme Court's holding in *Johnson*, the magistrate judge, while certainly deferential to the *pre-Johnson* determinations of this court, erred in applying the standard set forth in § 3143(a)(2) to determine whether bail was appropriate after defendant pled guilty to a § 922(g) offense. Instead, defendant's continuation on bond should have been considered under § 3143(a)(1).

*Id.* at pp. 2- 4. Applying the standard in § 3143(a)(1), the court found clear and convincing evidence that Elliott did not present a flight risk or a danger to the community because he had had no issues while on release, and ordered him released.

Other circuits have likewise applied the *Johnson* holding to other statutes. In *United States v. Gonzales-Longoria* 813 F3d 225 (5th Cir. Feb. 10, 2016) *(rehearing en banc granted)*, the court held that the language of § 16(b) is sufficiently similar to the ACCA's residual clause to also be unconstitutionally vague. In *United States v. Vivas-Ceja*, 808 F3d 719, 720 (7th Cir. 2015), the defendant's fleeing from an officer conviction was originally held to be a crime of violence under 8 U.S.C. § 1101(a)(43), which incorporates the definition of § 16. Reversing, the court held, "Section 16(b) is materially indistinguishable from the ACCA's residual clause. We hold that it too is unconstitutionally vague according to the reasoning of *Johnson*. We therefore vacate Vivas-Ceja's sentence and remand for resentencing." *Id.* at 720. And in *Dimaya v. Lynch*, 803 F.3d 1110, 1119 (9th 2015), the Ninth Circuit also found § 16(b) unconstitutionally vague in the same context.

### Recklessness is not sufficient *mens rea*

In another line of cases, courts have repeatedly held that a *mens rea* of recklessness is insufficient to qualify as a crime of violence. In *United States v. Zúñiga-Soto*, 527 F.3d 1110 (10th Cir. 2008), prior to *Johnson*, held that a prior conviction for assaulting a public servant did not qualify as a crime of violence justifying a 16 level enhancement under USSG § 2L1.2. Although § 2L1.2 does not contain a residual clause, that was not the *ratio decidendi*. Zúñiga-Soto claimed that assault could be committed by reckless behavior, and so could not qualify as a crime of violence. *The government did*

*not dispute this,* but argued that the modified categorical approach could be used to determine wither Zúñiga-Soto acted recklessly or intentionally. The Tenth Circuit disagreed, and held that the statute was not categorically a crime of violence. "[T]he portion of the Texas assault statute under which he pleaded guilty permits convictions for reckless conduct. In reaching this conclusion, we are guided by the Supreme Court's observation in *Leocal* that negligent or merely accidental conduct does not satisfy § 16's use of physical force requirement." *Id.* at 1117. Passing directly to the issue here, the court held,

> [I]n the time since the Supreme Court decided *Leocal* we have not had an occasion to decide whether a crime with a *mens rea* of recklessness could satisfy the use of physical force requirement in order to be classified as a crime of violence."
>
> One of this court's footnotes in *United States v. Zunie* cited a pre-*Leocal* case for the proposition that a crime with a *mens rea* of recklessness could qualify as "a crime of violence within the meaning of 18 U.S.C. § 16(a)." 444 F.3d 1230, 1235 n. 2 (10th Cir.2006) (citing *United States v. Reano,* 298 F.3d 1208, 1210 (10th Cir.2002)). The statement was dicta, and it does not control our determination here. The issue before the *Zunie* court was whether the government had presented sufficient evidence at trial to sustain a conviction under 18 U.S.C. § 113(a)(6), assault resulting in serious bodily injury.
>
> In light of the persuasive reasoning of our sister circuits, we are convinced that recklessness falls into the category of accidental conduct that the *Leocal* Court described as failing to satisfy the use of physical force requirement under either of § 16's definitions of "crime of violence." *See Leocal,* 543 U.S. at 9, 125 S.Ct. 377. **We therefore hold that a *mens rea* of recklessness does not satisfy use of physical force requirement under § 2L1.2's definition of "crime of violence."**

*Id.* at 123-1125. (emphasis added)

Other circuits agree that "the use of force must be intentional, not just reckless or negligent." *Garcia v. Gonzales*, 455 F3d 465, 469 (4th Cir. 2006) ("[I]n order for there to be a crime of violence sufficient to trigger deportation, "[t]he reckless disregard [requirement] in § 16 [must], relate *not* to the general conduct or to the possibility that harm will result from a person's conduct, but to the risk that the use of physical force against another might be required in committing a crime." *Leocal,* 543 U.S. at 10, 125 S.Ct. 377 (footnote omitted) (italics in original). "); *Popal v. Gonzales*, 416 F3d 249, 254-55 (3d Cir. 2005) ("Because Pennsylvania simple assault requires a *mens rea* of recklessness, rather than intent, it is not a crime of violence under § 16(a)" which would render the non-citizen removable); *Jimenez-Gonzalez v. Mukasey,* 548 F3d 557, 560 (7th Cir. 2008) (criminal recklessness is not a crime of violence justifying removal; recklessness cannot be a crime of violence); *United States v. Portela*, 469 F3d 496 (6th Cir. 2006) (reckless vehicular assault is not a crime of violence warranting an enhancement under § 2L1.2)*; United States v. Hernandez-Hernandez* 2016 WL 1077111 (5th Cir. March 17, 2016) ("To trigger the 16–level enhancement under the catch-all definition, 'the intentional use of force must be a constituent part of a claim that must be proved for the claim to succeed.'"); *United States v. Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2015) (California robbery did not constitute a "violent felony" under ACCA; "the use of force must be intentional, not just reckless or negligent," *Id.* at 1197)); *Fernandez-Ruiz v. Gonzales,* 466 F3d 1121, 1129-30 (9th Cir. 2006) (en banc) (neither recklessness nor

gross negligence supports a finding of a "crime of violence," determining that misdemeanor domestic violence assault was not a crime of violence rendering the non-citizen removable).

## Ms. Vigil's Circumstances Show by Clear and Convincing Evidence That She Poses No Flight Risk and No Danger to the Community

On February 5, this Court released Ms. Vigil to the La Pasada Halfway House and informed her that if she proved herself there for 30 days, that the Court would consider allowing her to return home. Ms. Vigil has proved herself. She has done everything asked of her and has done well at La Pasada.

As part of her responsibilities at La Pasada, she has involved herself in counseling which she has appreciated and from which she has benefitted. She reports greater insight and that she "found herself" during her time at La Pasada, and has been able to focus on her needs rather than just those of others. One consequence of this is that she has begun to participate in AA. She is also working on diet and exercise as a means of managing emotions that she had previously attempted to handle via prescriptions.[7]

---

[7] Ms. Vigil began taking antidepressant and anti anxiety in approximately 2010, when she lost her mother and brother very close in time to each other. While the two prescriptions she took are reported to cause drowsiness in some cases, in Ms. Vigil's case they had the opposite effect, and she was prescribed an additional medicine to assist her in getting to sleep at night.

Ms. Vigil has on her own surrendered her driver's license, and has no intent of ever driving again.

Additional evidence of both her responsibility and, should this Court determine that § 3143(a)(2) apply, extraordinary circumstances, are her successful efforts over the course of the three years, nine and a half months between the accident and the indictment, to nurse her daughter back to health.  This included not only the trips to Carrie Tingley, but a move from Dulce to Farmington to take advantage of superior therapies and schools.  Her daughter who was injured now thrives in school.  She was just chosen to represent her school at the regional science fair, where she received an honorable mention for her project:




It is truly extraordinary that the government would wait almost four years without doing anything, and then allege that Ms. Vigil is dangerous and should go to prison.  Ms. Vigil is neither a flight risk, nor a danger to the community nor anyone in it.  Ms. Vigil

respectfully requests the Court grant this motion and allow her to return to reside with her family in Dulce, New Mexico.

                Respectfully submitted,

                FEDERAL PUBLIC DEFENDER
                111 Lomas NW, Suite 501
                Albuquerque, NM 87102
                (505) 346-2489


                *[Electronically filed]*
                Kari Converse
                *Attorney for Ms. Vigil*


### CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on March 25, 2016, I filed the foregoing electronically through the CM/ECF system, which caused AUSA Joe Spindle to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

I FURTHER CERTIFY THAT on such date I served the foregoing by e-mail on the following non-CM/ECF Participants:  John Lovato, USPO

                *[Electronically filed]*
                Kari Converse

# Endnotes

1. **30-6-1. Abandonment or abuse of a child**.
   A. As used in this section:
   (1) "child" means a person who is less than eighteen years of age;
   (2) "neglect" means that a child is without proper parental care and control of subsistence, education, medical or other care or control necessary for the child's well-being because of the faults or habits of the child's parents, guardian or custodian or their neglect or refusal, when able to do so, to provide them; and
   (3) "negligently" refers to criminal negligence and means that a person knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of the child.
   ...
   (D) Abuse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be:
   (1) placed in a situation that may endanger the child's life or health;
   (2) tortured, cruelly confined or cruelly punished; or
   (3) exposed to the inclemency of the weather.

2. **14-612. Child abuse not resulting in death or great bodily harm; essential elements.**
   For you to find (*name of defendant*) guilty of child abuse, [as charged in Count __], the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
   1. (*name of defendant*) (*describe conduct or course of conduct alleged to have been child abuse*).
   2. By engaging in the conduct described in Paragraph 1, (*name of defendant*) [caused] [or] [permitted] (*name of child*) [to be placed in a situation that endangered the life or health of (*name of child*);]
   [OR]
   [to be exposed to inclement weather;]
   [OR]
   [to be [tortured] [or] [cruelly confined] [or] [cruelly punished];]
   3. (*name of defendant*) showed a reckless disregard [without justification] for the safety or health of (*name of child*). To find that (*name of defendant*) showed a reckless disregard, you must find that (*name of defendant*)'s conduct was more than merely negligent or careless. Rather, you must find that (*name of defendant*) [caused] [or] [permitted] a substantial and unjustifiable risk of serious harm to the safety or health of (*name of child*). A substantial and unjustifiable risk is one that any law-abiding person would recognize under similar circumstances and that would cause any law-abiding person to behave differently than (*name of defendant*) out of concern for the safety or health of (*name of child*);
   4. (*name of defendant*) was a parent, guardian or custodian of the child, or

(*name of defendant*) had accepted responsibility for the child's welfare;]
5. (*name of child*) was under the age of eighteen (18);
6. This happened in New Mexico on or about the __ day of _____, _____.